E. A. HENDRICKS v. ALEXANDER WILSON ET AL.

*(Case No. 3781.)*

1. LOCATION ON PATENTED LAND — MERGER — STATUTES CONSTRUED.— A land certificate, issued August 21, 1855, by the county court of Denton county, to one entitled to it by the judgment of that court, as a colonist of Peters' colony, was located and surveyed on land within the limits of the Mississippi & Pacific Railroad reservation on the 7th of December, 1855, and merged in a patent thereto on the 23d of September, 1856. In

a suit brought against the vendees of the patentee, by plaintiffs claiming under a location and survey of the same land made February 25, 1871, *held* —

1. Objections to the validity of the patent, on lands within the limits of the reservation, were obviated by the "act confirming certain patents, and to validate certain surveys in the Mississippi & Pacific reservation," passed January 7, 1860.

2. The certificate issued in August, 1855, having been merged in a patent before the passage of the act of February 4, 1858, being "an act to ascertain what land certificates have been illegally issued by the county courts of counties in Peters' colony, and to provide for issuing patents on such of said certificates as are legal," was not intended to be affected by that act.

3. The manifest object of the last act was to regulate the further issuance of patents, rather than to disturb certificates already merged into patents.

APPEAL from Ellis.    Tried below before the Hon. H. Barksdale.

The character of the suit is stated in the opinion.

The plaintiffs read in evidence certified copies from the general land office of the following documents:  First. Of duplicate bounty warrant certificate No. 313, issued to Peter Rouche by W. S. Hotchkiss, commissioner of claims, February 24, 1860, for 1,280 acres of land, with indorsements thereon.  Second. Field notes of survey covering the land sued for, made by virtue of that warrant, by the county surveyor of Ellis county, February 25, 1871, with indorsements thereon.  Third. Of transfer from Peter Rouche to H. G. Hendricks and J. P. Smith, dated September 7, 1870, of that warrant, which was read by agreement without further proof of the execution of the original; they proved also by the deposition of J. J. Groos, commissioner of the general land office, that the field notes and bounty warrant were returned to and filed in the land office on April 20, 1871, and that the records of his office show that the Peter Rouche warrant is a genuine and valid certificate, and that patents have been issued on a portion of that certificate to H. G. Hendricks and J. P. Smith, assignees.    They also proved that Hendricks died

March 13, 1873, and that E. A. Hendricks is his surviving widow, and the other plaintiffs who join her as his children were his only heirs.

Defendant Caldwell read: First. The Russell patent, issued September 23, 1856, embracing the land sued for. Second. Transfer of the Russell certificate from Meredith, the administrator, to Lewelling *et al.*, dated December 28, 1855. Third. Deed dated October 6, 1857, from Lewelling, Nicholson and Allen to John A. Sowers, for the land sued for. Fourth. Deed dated December 1, 1857, from John A. Sowers to R. D. Caldwell, for same land. None of these deeds contain any clause of general warranty of title. They also proved by defendant Wilson that he was the son-in-law of Caldwell; that he occupied the land for him; that Caldwell lived in Tennessee, and that he (Wilson) had been on the land over two years when this suit was instituted, and had made improvements on the land of the value of $2,030. On cross examination he stated that the land without any improvements was worth six dollars per acre; and his attention being called to the fact that the Russell certificate had not been approved by the board of commissioners appointed under an act of February, 1858, he stated that no suit had ever been instituted or other proceedings had in the district court to validate that certificate.

The plaintiffs, to show that the Russell patent, under which Caldwell claimed title, was a nullity and conferred no right on any one, read certified copies from the general land office of the following papers: First. Certificate issued by the clerk of the county court of Denton county, on the 21st of August, 1855, to William Meredith, administrator of Robert Russell, deceased, by virtue of which the land was surveyed and patent issued. Second. Field notes of survey dated December 12, 1855, made by virtue of that certificate. Third. Report of commissioners appointed under an act of February 4, 1858, to show that the Russell certificate was not approved by the board.

It was admitted that the court should take cognizance of the

fact that the land when surveyed and patented on the Russell certificate was within the limits of the reservation, created by act of the 21st of December, 1853.[1] The judge gave judgment on the law and facts, for the defendants.

The plaintiffs have appealed, and assign as errors: First. The court erred in not rendering judgment for the plaintiffs for the land and for the defendants for improvements. Second. The court erred in rendering judgment for the defendants, because, 1. The Russell patent, under which Caldwell sets up title, was issued contrary to law on the 23d of September, 1856, on a survey made in 1855, within the limits of the Mississippi & Pacific Railroad reservation, created by an act of the 21st of December, 1853. 2. The certificate, by virtue of which said patent issued, was fraudulently issued by the county court of Denton county, to one Meredith, administrator of R. Russell, deceased, without authority of law, and is null and void. 3. Said certificate was issued after the 1st of February, 1855, and was not approved by the board of commissioners created under an act of February 4, 1858, entitled "An act to ascertain what land certificates have been illegally issued by the county courts in Peters' colony, or declared valid by the district court under the provisions of said act or of the act of July 24, 1860, and is not a genuine certificate, but is illegal, null and void.

*Smith & Jarvis* for appellants.— The evidence was sufficient to show title in plaintiffs, under action of trespass to try title, and they were entitled to recover if the land was a part of the public domain and subject to entry at the date of their survey, February 25, 1871.

Under the decision of this court in Sherwood *v.* Fleming, 25 Tex. Sup., 408, and cases there cited, it was not insisted in the district court that the Russell patent was valid, or conferred any right on any one to the land when Caldwell bought

---

[1] Pasch. Dig., art. 5033; Wright *v.* Hawkins, 23 Tex., 453.

in 1857.   He therefore acquired no title to or interest in the land at the time of his purchase, as it was then, confessedly, a part of the public domain.   When, then, we ask, did he acquire title as against the state?   It is insisted by appellees that the act of January 10, 1860, validated and made good the Russell patent.   This law certainly implies that there were patents issued as well as surveys made by virtue of colony certificates that the legislature did not intend to validate.   If the Russell certificate was at the date of this act a genuine colony certificate, the defendant Caldwell has title to the land; otherwise the act gave him no title and he has none yet.

It is important, then, that we know the meaning of "genuine" as used in this statute.   It was insisted by appellee in the court below, and we understood the district judge to hold, that as used in this statute it means not forged, and that all certificates issued by the county courts of counties in Peters' colony to persons as colonists were genuine colony certificates, whether the parties were, in law, entitled to them or not. We hold that it was intended to and does only embrace such colony certificates as were recognized by law as legal and valid claims, issued by the proper tribunals, and to parties entitled by law to receive them.

It could hardly be seriously insisted that the legislature, by its use in this act, intended merely to guard the public domain against forged colony certificates, because:   First, no such certificates were ever known to be in existence.   Second, a forged certificate would not be a colony certificate, but it would be a forgery; and even though located and patented would be void, and would confer no right on any one.   Both certificate and patent would be nullities.   This word has become technical in our law, and is always used by this court in reference to land certificates required to be re-established by the traveling board under act of 1841, to detect fraudulent land certificates, to designate those that were established according to law as legal and valid.   It occurs three times on pages 452 and 453 in Warren v. Shuman, 5 Tex., to which we respect-

fully call special attention. No colony certificates are known to us to have been illegally issued in any but Peters' colony. What Peters' colony certificates, then, are genuine, and what illegal and void? The act of July 21, 1850 (Pasch. Dig., art. 828), was the first law authorizing certificates to be issued to settlers in Peters' colony. The first section defined the rights of those who had emigrated to this state as colonists, and settled within the limits of said colony. The second section provided that the heirs or legal representatives of such settlers as had died, were entitled to the same quantity of land to which the persons they represent would have been entitled. The seventh section prescribes the proof required; that is, "that such settler emigrated to Texas and settled within the limits of said colony granted to Peters and others, as a colonist, *prior to the 1st day of July, 1848*, and that they have since continued, and still remain, settlers in said colony," etc. The eighth section provides for the appointment of a commissioner to hear proof and determine who were entitled. The sixteenth section fixed his term of office at two years; and the fourteenth section allowed an appeal from the commissioner to the district court.

Thomas W. Ward was commissioner under this law, and the certificates issued by him, or by the district court on appeal from his decision, are presumed to be genuine colony certificates, and are genuine unless void under article 845, Pasch. Dig., adopted September 6, 1850, which declares, "any certificate which has been or may be issued contrary to the true intent and meaning of said act (July 21, 1850), to which this is supplementary; and each and every survey which has been or may be made in virtue of such certificate, and each and every patent which may be issued in virtue thereof, and every sale and transfer of said unauthorized certificates, and of land located under the same, is and shall be null and void." If so wrongfully issued they would not be genuine, but illegal, fraudulent and void.

"An act relating to lands in Peters' colony," known as the

compromise act, was adopted February 10, 1852. The tenth section (Pasch. Dig., art. 857) of which, alone, relates to issuing certificates to settlers, and it secures land to a class of settlers not provided for in the act of July 21, 1850, *i. e.,* "every colonist who settled within the colony prior to July 1, 1848, and remained therein three years, but who was not residing therein on the 21st of July, 1850, and who has not received a certificate from the colony commissioner, Thomas W. Ward; or if residing therein at that time, and now (February 10, 1852) a resident of said colony, and who has not received a certificate as aforesaid." This section also gave jurisdiction to the county courts of counties in the colony to hear proof and issue certificates, but it nowhere, by its letter or fair implication, authorizes said courts to issue certificates to heirs or legal representatives. The supreme court, in Smith *v.* The State, 5 Tex., 405, says of a certificate granted by the district court under law of 1841: "Any other certificate than those provided for by law would be a nullity."

By an inspection of the Russell certificate, in virtue of which Caldwell claims the land, it seems to be a certified copy from the minutes of the county court of Denton county of the order granting the certificate, which incorporates in the decree the evidence before the court; it appears from this certificate that it issued to Meredith, administrator of Robert Russell, deceased, when the statute did not authorize said court to issue such certificates at all; it further appears that it issued upon evidence insufficient under the law, and was illegal and fraudulent. If there was any merit in the case, it was not provided for by law, and did not come within the provisions of the tenth section of the act of February 10, 1852. It was, therefore, not a case in which the state had consented to the grant of her public domain, or a certificate, and the heirs or administrator should have applied to the legislature and not to the courts that were not clothed with power to grant relief. The act of 1852 was not supplementary to nor did it re-enact any of the provisions of the law of July 21, 1850. If correct

in this view of the law, the Russell certificate was null and void from its inception (5 Tex., 403).

*Ferris & Rainey* for appellees. — A certificate which has merged into a patent is not subject to the action of an investigating board. Smith *v.* The State, 5 Tex., 405. The patent appropriates the land and gives the legal title to the patentee. Any defects in the preliminary steps by which it was acquired are cured by the grant. Boardman *et al. v.* The Lessees of Reed & Ford *et al.*, 6 Pet., 342; Hoofnagle *v.* Anderson, 7 Wheat., 212. Land warrants are, by law, transferable. They are proved by the signature of the officer and the seal of office. This signature and this seal are considered as full proof of the rights expressed in the paper. No inquiry is ever made into the evidence received by the public officer. If the purchaser of such a paper takes it subject to the risk of its having issued erroneously, there ought to be some termination to this risk. We think it ought to terminate when the warrant is completely merged in a patent, and the title consummated without having encountered any adverse claim. Hoofnagle *v.* Anderson; 7 Wheat., 215; 5 Pet., 274. A third party cannot raise in ejectment the question of fraud as between the state and the grantee, and thus look beyond the patent. Field *v.* Seabury *et al.*, 19 How., 332; Spencer *v.* Lapsley, 20 How., 272. We therefore hold it to be good law, sustained by reason and the best authority, that when a certificate has merged into a patent it is not subject to the action of any investigating board created afterwards. The certificate is evidence of an adjudged right to acquire land. It loses its identity in the patent, which is the highest evidence of title to land acquired.

GOULD, ASSOCIATE JUSTICE. — On the 21st day of August, A. D. 1855, the county court of Denton county issued a certificate for 640 acres of land to the administrator of Robert Russell's estate, having adjudged him to be entitled to same as a colonist of Peters' colony. A survey was made, by virtue of

that certificate, in Ellis county, within and pending the Mississippi & Pacific Railroad reservation, on the 7th day of December, A. D. 1855; the patent issued thereon on the 23d day of September, 1856, to the heirs of Robert Russell. There was a regular and valid chain of title from the estate of said Robert Russell, deceased, down to the defendant Caldwell. Possession was taken by defendant in 1872, and improvements were made thereon of the value of $2,030. The taxes due and owing on the land were also regularly paid by defendants. The plaintiffs brought this action of trespass to try title against defendants for said land, claiming title under a location and survey made February 25, 1871. A jury was waived and the cause was submitted to the court on the law and the evidence, the plaintiffs admitting the claim of defendants for the value of the improvements. Judgment was rendered against the plaintiffs for the land.

On the part of appellants it is claimed that the Russell patent, under which Caldwell sets up title, was issued contrary to law, the land being within the limits of the Mississippi & Pacific Railroad reserve, and not subject to location at the date of either the survey or patent. Appellees reply that any objection to the validity of their patent was obviated by "an act confirming certain patents, and to validate certain surveys in the Mississippi & Pacific Railroad reservation," passed January 10, 1860, as follows: "All patents heretofore issued upon surveys made by virtue of any genuine colony certificate, within the limits of the Mississippi & Pacific Railroad reservation, be and the same are hereby declared to be as valid and legal as if no such reservation had ever been made, etc." Pasch. Dig., art. 5051.

The principal question in the case is as to the meaning of the expression, "any genuine colony certificate," whether it includes the Russell certificate or not. To the proper understanding of that question it is necessary to refer to "an act to ascertain what land certificates have been illegally issued by the county courts of counties in Peters' colony, and to provide

for issuing patents on such of said certificates as are legal," passed February 4, 1858. By this act a commission was created to inspect the records of the county courts in Peters' colony, and to ascertain by satisfactory testimony what certificates for land had been so issued by said courts to legal claimants.

Section 11 of this act reads thus: "That all land certificates issued by said county courts, since the 1st day of February, 1855, to persons as colonists of Peters' colony, which are not approved by the board of commissioners, or declared valid by the district courts under the provisions of this act, are hereby declared null and void; and all locations and surveys made by virtue of such certificates as are not hereafter so approved or declared valid, are also declared null and void."

The Russell certificate was literally of the class required to be approved; but our opinion is, that having been merged in a patent, it was not intended to be effected by the act. The title of the act indicates no intention to interfere with certificates already patented. Nowhere in the body of this voluminous act of thirteen sections, going largely into detail, or of the supplementary act of January 24, 1860 (Gen. Laws 8th Leg., p. 26), is there any provision for annulling or vacating patents, such as there is in regard to locations and surveys. In our opinion the manifest object of the act was not to disturb certificates which had been merged into patents, but to regulate the further issuance of patents. If it had been intended to require the holder of patented land to withdraw from the land office a certificate which had become a part of the archives, and submit it for approval to a commission, surely that intention would have been expressed plainly, and provision made regulating the mode of withdrawal and the cancellation of the patent.

At the date of the passage of this act there had been no decisions of this court that either surveys or patents within the railroad reservation were invalid or null and void. The cases of Kimmell *v.* Wheeler and Sherwood *v.* Fleming were

of subsequent date. It is not believed that the act failed to provide for patented certificates on any idea that such patents were nullities. On the contrary, it is believed that the construction which was given the act by the commission which executed it was, and its true meaning was, that patented colony certificates, whether within or without the railroad reservation, were beyond its operation. The word "genuine" could not have been used in the sense of "approved" by the board, for we have just seen that no law had been enacted making such approval the test of the genuineness of patented certificates. Although the Russell certificate had not been approved by the commission, it was in our opinion a "genuine colony certificate" within the meaning of the statute. It was a certificate issued under authority of law, by a competent tribunal, and whether Russell should have been awarded the certificate by that tribunal or not, it was genuine, not forged. No provision had been made or was subsequently made for reopening the question of whether a certificate merged into a patent was rightly granted or not. On the contrary, the legislature ultimately affirmed titles to all lands patented by virtue of certificates to colonists issued by the county court omitting the qualifying word "genuine." Acts of 1871, second session, p. 12. This act was passed, it is true, after the location by appellees, and could not affect their rights. It is referred to only as part of the legislative history of the subject, tending to confirm the construction we have given the statutes.

In our opinion, after the act of January 10, 1860, the Russell patent was, whatever may have been its status before, valid and legal; and it is not material to inquire whether the certificate should originally have issued to the administrator or to the heirs. The land was patented by virtue of a certificate issued by competent authority, and was not subject to location.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered June 15, 1880.]